IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID CHRISTOPHER LEE WALTON,

                                                     OPINION AND ORDER

        Petitioner,

                                                     20-cv-216-bbc

    v.

WARDEN BRIAN FOSTER,

        Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Petitioner David Walton filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, in which he challenges his January 29, 2016 judgment of conviction in the Circuit Court for Monroe County, Wisconsin in Case No. 2015CF254 for armed robbery and felony and misdemeanor theft as a party to a crime and repeater. Petitioner contends that:

1. His trial counsel was ineffective for the following reasons: (a) failing to request a <u>Miranda</u>-<u>Goodchild</u> evidentiary hearing to determine whether petitioner's statements to Detective Tester on June 12, 2015 were voluntary; (b) failing to impeach Courtney Stalsberg—petitioner's co-defendant and a key witness in the prosecution's case—with prior convictions, pending cases and inconsistent statements; (c) failing to impeach witnesses Orlando Thomas and Travis Stewart with prior convictions and pending cases; and (d) failing to object to the testimony of Ty Brey, petitioner's extended supervision agent.

2. The state courts failed to grant petitioner a new trial in the interests of justice based on his trial counsel's errors and "newly discovered" evidence that Stalsberg admitted in text and email messages that she lied in her testimony about petitioner's involvement in the crimes.

The petition is briefed and ready for decision.

1

For the reasons that follow, I conclude that petitioner has failed to show a denial of his constitutional rights. Accordingly, the petition will be denied.

BACKGROUND

The following facts are drawn from the petition and state court records provided by petitioner and the state.

A. Pretrial Proceedings

In Monroe County case number 2015CF254, petitioner James Washington was charged with armed robbery, felony and misdemeanor theft and possession of THC, as a party to the crime and as a repeater, in violation of Wis. Stat. §§ 939.41(3g)(e), 943.32(2) and 943.20(1)(a). The underlying charges accused petitioner robbing a tavern in Sparta, Wisconsin on the night of June 11, 2015. According to the criminal complaint, a black male entered the tavern wearing a camouflage jacket, gloves, a baseball hat, and a bandana covering his face. The man displayed a gun and took approximately $7,000 in cash, as well as the manager's purse. After the robbery, various items were recovered from a nearby dumpster, including clothing worn by the robber and the manager's purse. When police searched the car belonging to petitioner's girlfriend, Courtney Stalsberg, they found a case containing more than $6,000 in the trunk. Police also found bank slips showing that petitioner had deposited $828 in cash the day after the robbery. Dkt. #22-7 at 2.

Prior to trial, the state filed a motion in limine to introduce other acts evidence related to petitioner's 2008 convictions for the robberies of two other local businesses. At a hearing on the motion, petitioner's trial counsel, Donald Harman, did not oppose the admission of this evidence, stating that petitioner welcomed the opportunity to admit his involvement in the 2008 robberies but maintain his innocence with respect to the current charges. The circuit court independently decided to allow evidence only with respect to one of the 2008 robberies. Dkt. #22-4 at 9-10.

B. Trial

1. State's case

Several witnesses testified at petitioner's three-day jury trial held on October 21-23, 2015. Stalsberg testified that petitioner entered the tavern while she waited in the car with their housemate, Cody Nelson. She testified that petitioner was wearing a camouflage jacket, gloves, bandana, "do-rag" and a baseball cap. Stalsberg further testified that after the robbery, petitioner discarded the clothing and other items in a dumpster. Id. She admitted that she did not tell the truth to investigators and initially falsely accused petitioner's nephew, Juwan, to keep attention off of petitioner and Nelson. Dkt. #22-9 at 170. Stalsberg also admitted telling different stories about what had happened, implicating petitioner and Nelson to varying degrees to protect them. Id. at 172. On cross examination, Stalsberg denied telling Angelia Rivas, an acquaintance,

that she had falsely accused petitioner because he had left her for another woman. Id. at 183.

The state presented video footage showing the robber wearing a bandana over his face, a do-rag, a baseball cap and a camouflage jacket. Dkt. #22-9 at 217, 220, 235-36. Trial evidence showed that these items were later recovered from a dumpster not far from the tavern and Stalsberg testified that petitioner threw them and a purse stolen from the bar manager in the dumpster. Id. at 164, 238-39. DNA testing of biological samples taken from the hat and do-rag identified petitioner as the source of the biological sample with a probability of error of less than 1 in 680 quadrillion. Id. at 238-39; dkt. #22-10 at 79-86.

The state introduced a series of text messages exchanged between petitioner and Stalsberg discussing possible targets for robberies, including the tavern. On June 8, 2015, petitioner's phone texted Stalsberg's phone that "[w]e can do that bank in Rockland," and then a lengthy exchange about different banks to target in the area. Dkt. #22-10 at 44-47. The next day, petitioner's phone texted Stalsberg's phone that "I am going to do the Cenex tonight and me and Cody been talking about doing Wayside too." Id. at 52. Incriminating messages between petitioner's phone and co-conspirator Nelson's phone also were introduced. Id. at 57-58. In one exchange, petitioner said he was "tak[ing] the hammer," and Nelson responded, "Go for it" and "Be careful bro." Petitioner directed Nelson to "Delete out messages bro." Id. at 58.

4

The state introduced evidence that petitioner opened up a new bank account with more than $800 in cash the day after the robbery, even though petitioner had recently told various people, including his probation officer, that he did not have any money. The police found a case containing more than $6,000 in cash in the trunk of the car petitioner was driving when he was arrested. Dkt. #22-7 at 3.

Detective Clayton Tester of the Monroe County Sheriff's Department testified about the similarities between the 2008 robbery of Sparta Video and the robbery of the Wayside Tavern. Dkt. #22-10 at 282-86. He also testified that petitioner made statements to him subsequent to his arrest on June 12, 2015, including:

- Petitioner had quit his job the previous week, his last paycheck was only for a few days of work at $9.40 an hour and he was no longer staying in motels because he did not have any money.

- Petitioner had saved up the $800 that he was depositing in a bank account.

- Petitioner initially denied knowing the location of the Wayside Tavern but later admitted being at the tavern at 3:00 p.m. on the day of the robbery so that Nelson could cash a check.

Id. at 286, 289-92.

Petitioner's probation agent, Tyrel Brey, testified that petitioner had been convicted of armed robbery in 2008, and sentenced to eight years of initial confinement and eight years of extended supervision. Dkt. #22-10 at 369. Brey stated that on May 29, 2015, at his last meeting with petitioner before the robbery, he asked petitioner to open a checking account. Id. at 369-70. Brey reported that petitioner's response was

5

that he did not have $25 at the time to open the account.  Petitioner never told Brey that he had saved $800.  Id. at 370.  Brey also testified that he had viewed the security video of the robbery, and that the person in the video had petitioner's size and shape.  Id. at 375.

Orlando Thomas, an inmate in the same cell block of the jail as petitioner in June 2015, testified that petitioner had told him that he had robbed the Wayside Tavern with Nelson and Stalsberg and had robbed four or five other places.  Dkt. #22-10 at 427-28.  Travis Stewart, another inmate, testified that he had been incarcerated with petitioner and Stalsberg in the weeks leading up to the trial and passed messages between them.  Id. at 438-39.  Stewart said that there was "some discussion" "to a point" of petitioner "possibly put[ting] some money on Stalsberg's books there" or buying her some "snack packs" if she did not testify.  Id. at 440.  On cross examination, defense counsel asked Stewart whether Stalsberg had brought up the subject of the Wayside Tavern robbery, and Stewart responded that she had done so twice.  Id. at 447-48.  Stewart said that he had told Stalsberg that "they were stupid for doing what they did.  And she said, 'I didn't do it.'  She said, 'I was just driving.  And he is the one that went inside and said he was just going to check it out.'"  Id. at 448.

2. Defense case

Petitioner testified in his own defense that Stalsberg engineered the robbery and framed him for it because he had become involved with another woman.  He testified

6

about various threats Stalsberg had made in an attempt to prevent him from leaving her, including threats to have him arrested. Petitioner denied any involvement in the tavern robbery and also denied sending all but one of the incriminating texts. He testified that Stalsberg often used his phone and could have created the trail of text messages in order to frame him. Petitioner further testified that Stalsberg was using his phone at the time of the incriminating text that mentioned the tavern. Petitioner testified about his 2008 conviction for *two* armed robberies, asserting that he had admitted his involvement and taken responsibility for those crimes. Dkt. #22-7 at 3.

Rivas testified that Stalsberg had said that petitioner would be sorry if he left her. According to Rivas, when Stalsberg was asked if she had set petitioner up for the robbery, Stalsberg replied, "Well, I told you if I can't have him, nobody can." Id. at 4. Warren Stalsberg, Courtney's father, testified that his daughter did not have a reputation for truthfulness. Petitioner's former in-laws, Steve and Theresa Latimer, testified that they did not believe that the robber in the tavern video recording was petitioner. Id.

3. Instructions, verdict and sentence

As to evidence of the 2008 robbery of Sparta Video, the court told the jurors that they could consider the evidence only for "the issue of identity, that is, whether the prior conduct of the defendant is so similar to the offense charged that it tends to identify the defendant as the one who committed the offense charged in the case." Dkt. #22-11 at 701-02. The court warned that the evidence "is not to be used to conclude the defendant

7

is a bad person and for that reason is guilty of the offense charged." Id. at 702. The jury found petitioner guilty on all counts except the possession of THC. Dkt. #22-7 at 4. The court imposed a total sentence of 18 years of initial confinement and 10 years of extended supervision. Dkt. #22-1 at 2-5.

### C. Postconviction Motion

Petitioner filed a motion under Wis. Stat. § 809.30 for postconviction relief, alleging that trial counsel was ineffective in multiple respects, and that newly discovered evidence and trial counsel's ineffectiveness warranted a new trial in the interest of justice. Dkt. #22-7 at 4. As he did in his federal habeas petition, petitioner alleged that counsel was ineffective for not requesting a Miranda-Goodchild hearing to assess whether statements that he made to Detective Tester were voluntary; not impeaching Stalsberg with prior convictions, pending cases and inconsistent statements; not impeaching his former cellmates, Thomas and Stewart, with prior convictions and pending cases; and not objecting to Brey's testimony on Fifth Amendment self-incrimination grounds. Dkt. #28-2 at 5-6, 9, 12-17.

The circuit court held an evidentiary hearing and denied the postconviction motion in a separate hearing. Dkt. #28-1 and -2. Petitioner's postconviction counsel largely abandoned the claim that counsel should have sought a Miranda-Goodchild hearing, acknowledging that defendant did not have a valid or strong claim. Dkt. #28-1 at 88. The court accepted this concession and agreed that the claim was weak,

8

concluding that there was no prejudice from counsel's failure to bring a claim that had no chance of success. Dkt. #28-2 at 17. The court determined that counsel was deficient for not impeaching Stalsberg, Thomas and Stewart with prior convictions and pending cases, and for not impeaching Stalsberg with prior inconsistent statements as well. Dkt. #28-2 at 12-13, 17-18. In addition, the court assumed without deciding the issue that counsel was deficient for not seeking to suppress Brey's testimony. Id. at 14-15.

Despite these concessions, the circuit court concluded that petitioner could not show prejudice from any of these errors because the evidence of his guilt was overwhelming. Id. at 19-22. The court also denied petitioner's request for a new trial in the interest of justice, finding that petitioner had failed to prove either a miscarriage of justice or a substantial probability that a new trial would have produced a different result. Id. at 23.

### D. Appellate Proceedings

Petitioner appealed his conviction and the order denying a new trial, renewing his claims that counsel had rendered ineffective assistance and the interest of justice warranted a new trial. Dkt. #22-7 at 5-9. In a per curiam opinion, the Wisconsin Court of Appeals rejected petitioner's arguments and upheld the circuit court's order denying relief and the judgment of conviction. The court of appeals concluded that petitioner was not entitled to a new trial for ineffective assistance because he failed to demonstrate prejudice under Strickland v. Washington, 446 U.S. 668 (1984). Id. at 5. It noted that

the circuit court had concluded and the state had conceded on appeal that trial counsel was deficient for not impeaching Stalsberg, Thomas and Stewart with prior convictions and pending cases, and for not impeaching Stalsberg with prior inconsistent statements. Id. at 5. Although the state argued that counsel was not deficient for failing to bring a Miranda-Goodchild motion with respect to Detective Tester or for not seeking to exclude Brey's testimony, the court of appeals assumed without deciding the issue that counsel was deficient in these areas as well. Id. at 5, 7.

Despite the alleged errors committed by petitioner's trial counsel, the court of appeals agreed with the circuit court's conclusion that petitioner could not prove prejudice because the evidence against him was overwhelming. Id. at 6. That evidence included incriminating text messages, DNA evidence connecting petitioner to clothing worn in the robbery, the video recording of the robbery, petitioner's newly opened bank account and the $6,000 in cash found in the trunk of the car petitioner was driving. Id. The court of appeals also agreed with the circuit court that petitioner did not have a viable defense because "to acquit [defendant] Walton, the jury would have to believe that Stalsberg was capable of planning and carrying out an 'elaborate scheme of fabricating and planting evidence to pin this on Mr. Walton.'" Id. It stated that even if petitioner's trial attorney had done more to limit or undermine the damaging testimony from Stalsberg, Thomas, Stewart, Tester and Brey, petitioner could not establish prejudice in light of "the damaging effect of the remaining evidence against him." Id. at 6-7.

Therefore, the court of appeals affirmed the circuit court's denial of petitioner's motion for a new trial on the ground of ineffective assistance of counsel.

The court of appeals noted its discretionary power to order a new trial upon finding that "the real controversy was not fully tried, or that there was a miscarriage of justice," as set forth in Wis. Stat. § 752.35. Id. at 8. However, it rejected petitioner's arguments for a new trial on this ground, finding that defense counsel's failure to impeach Stalsberg, Thomas and Stewart, and failure to object to law enforcement testimony about defendant's 2008 robbery conviction, did not mean that the real controversy was not fully tried or that there was a miscarriage of justice. Id. The court reiterated its finding that even if the circuit court had excluded all of the objectionable testimony, the evidence against petitioner would still be overwhelming. Id.

In a footnote, the court also concluded that petitioner had failed to show that newly discovered evidence—Facebook messages in which Stalsberg expressed regret about lying about "him in the robbery" and "everything"—warranted a new trial. Id. at 7 n.1. First, the court stated that petitioner's failure to file a reply brief in the court of appeals "may be deemed a concession" to the state's argument that to the extent Stalsberg's messages could be regarded as a recantation, they could not be considered because they were uncorroborated. Id. Second, the court determined that even if petitioner had not waived his argument, "nothing in these messages . . . would help Walton establish that Stalsberg concocted and carried out an elaborate scheme to frame Walton." Id.

11

Petitioner filed a petition for review, which the Wisconsin Supreme Court denied in a May 8, 2018 order.

OPINION

Petitioner contends that he is entitled to habeas relief because: (1) his trial attorneys were ineffective for challenging the testimony of several witnesses; and (2) the state courts erred in failing to grant him a new trial in the interests of justice based on his trial counsel's errors and "newly discovered" evidence. To prevail on his petition, petitioner must show that he is "in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. §§ 2241(c), 2254(a).

A state court's decision rejecting petitioner's claim on the merits is subject to the deferential standard of review under 28 U.S.C. § 2254(d). Under § 2254(d)(1), petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." A decision is contrary to clearly established federal law if it applies a rule that is different from governing law set forth in Supreme Court cases. Bailey v. Lemke, 735 F.3d 945, 949-50 (7th Cir. 2013). A decision involves an unreasonable application of Supreme Court precedent if the decision identifies the correct governing rule of law, but applies the law unreasonably to the facts of the case. Id.

Alternatively, petitioner can obtain relief if he shows that the state court's adjudication of his claim on the merits was based upon an unreasonable determination of

12

the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). The federal court owes deference to the state court. The underlying state court findings of fact are presumed correct unless the petitioner comes forth with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); Campbell v. Smith, 770 F.3d 540, 546 (7th Cir. 2014). The Wisconsin court of appeals issued the last reasoned decision on the merits of petitioner's claims, so its analysis deserves deference so long as that analysis is reasonable. Gage v. Richardson, 978 F.3d 522, 529 (7th Cir. 2020).

### A. Ineffective Assistance of Trial Counsel

To succeed on a claim of ineffective assistance of counsel, petitioner must show both that his counsel's performance was deficient and that he was prejudiced as a result. Strickland, 446 U.S. at 687. To demonstrate deficient performance, petitioner must show "that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. To demonstrate prejudice, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The Wisconsin court of appeals assumed for the purposes of its analysis that petitioner's trial counsel was deficient in all of the ways petitioner claimed but rejected petitioner's ineffective assistance claims on the ground that he could not satisfy the prejudice prong for those claims. The court identified two main reasons why petitioner was not prejudiced. First, the evidence of petitioner's guilt was overwhelming, regardless

13

whether the objectionable witness testimony was excluded. Second, petitioner's claim that Stalsberg had concocted all of this evidence in an elaborate scheme to frame him was improbable and not supported by any evidence.

The question for this court is whether the court of appeals applied <u>Strickland</u> unreasonably in concluding that petitioner failed to show prejudice. <u>Carter v. Duncan</u>, 819 F.3d 931, 943 (7th Cir. 2016) (even if counsel's performance was deficient, conviction must be upheld if state court's prejudice analysis was not unreasonable). Only if the court made a "clear error in applying <u>Strickland</u>" can petitioner's habeas petition succeed. <u>Allen v. Chandler</u>, 555 F.3d 596, 600 (7th Cir. 2009). <u>See also</u> <u>Hardaway v. Young</u>, 302 F.3d 757, 762 (7th Cir. 2002) ("A state court decision must be more than incorrect from the point of view of the federal court; AEDPA requires that it be 'unreasonable,' which means something like lying well outside the boundaries of permissible differences of opinion.").

Petitioner's ineffective assistance claims fail because the court of appeals's decision was reasonable and well-supported by the evidence presented at trial. As the court of appeals pointed out, even if petitioner had convinced the jury that Stalsberg, Tester, Thomas, Stewart and Brey were not credible, there was still ample evidence upon which the jury could have relied to find guilt. In particular, there was evidence of the following:

- Incriminating text messages between petitioner and Stalsberg and petitioner and Nelson about carrying out the Wayside Tavern and other robberies.

- Video surveillance footage showed the robber to be the same body shape and size as petitioner and wearing clothing like that later recovered from a dumpster near the site of the robbery. DNA evidence recovered on some of the items identified matched that of petitioner.

- The morning after the robbery, petitioner opened a new bank account with over $800 in cash. Police later found $6,282 in cash in a briefcase in the trunk of petitioner's car.

In light of this evidence, it was reasonable for the court of appeals to conclude that the likelihood of a different result at trial was not substantial. Harrington v. Richter, 562 U.S. 86, 112 (2011) (in assessing prejudice under Strickland, the likelihood of a different result must be "substantial, not just conceivable.").

As he did at trial and on appeal, petitioner argues in his brief in support of his petition that there is no evidence linking petitioner to the robbery that Stalsberg could not have manipulated. However, as the court of appeals explained, this defense required the jury "to believe that Stalsberg was capable of fabricating [or planting] all the evidence" against him, including all the text messages—from her phone, Walton's, and Nelson's—the clothing matching that of the (as-yet unidentified) robber found in the dumpster containing Walton's DNA, and the cash found in Stalsberg's vehicle after opening the new account and depositing more than $800. Petitioner failed to present any evidence in state court showing that Stalsberg had the wherewithal to carry out such an elaborate scheme. Dkt. #22-7 at 6-7. Accordingly, the court of appeals reasonably concluded that petitioner's defense that Stalsberg masterminded such an elaborate conspiracy against him was wholly implausible.

15

In addition, the jury knew that petitioner disputed Stalsberg's testimony and believed that she had framed him. Petitioner maintained his innocence throughout trial and testified that he had not committed the robbery and had been framed by Stalsberg who was upset with him for becoming involved with another woman. In addition, Stalsberg admitted that she initially gave investigators conflicting accounts of petitioner's involvement in the robbery, Stalsberg's father testified that his daughter was not known to be a truthful person and Rivas testified that Stalsberg had reason to falsely accuse petitioner.

In sum, the court of appeals's rejection of petitioner's ineffective assistance of counsel claims was not contrary to or an unreasonable application of the prejudice prong of Strickland. Nor was the court's decision unreasonable in light of the evidence.

### B. Denial of New Trial

Petitioner contends that the state courts improperly denied his request for a new trial in the interest of justice under Wis. Stat. § 752.35, which he based on the previously-discussed alleged errors of his trial counsel and "newly discovered" evidence that Stalsberg admitted that she lied in her testimony about petitioner's involvement in the crimes. The court of appeals rejected petitioner's interest of justice claim on the grounds that: (1) petitioner was merely re-purposing his ineffective assistance arguments; and (2) by not filing a reply brief, petitioner had conceded the state's argument that Stalsberg's purported recantation did not warrant a new trial without corroboration. As

16

respondent argues, petitioner's claim is not a cognizable claim for federal habeas relief because the state court based its decision on independent and adequate state law grounds.

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Tabb v. Christianson, 855 F.3d 757, 764 (7th Cir. 2017) (citing Herrera v. Collins, 506 U.S. 390, 390-91, 400 (1993)). See also Johnson v. Bett, 349 F.3d 1030, 1038 (7th Cir. 2003) ("For claims based on newly discovered evidence to state a ground for federal habeas relief, they must relate to a constitutional violation independent of any claim of innocence."). In cases like this one in which the newly discovered evidence is a "witness recantation[] of trial testimony or confessions by others of the crime, most courts decline to consider it in the absence of any showing that the prosecution knowingly proffered false testimony or failed to disclose exculpatory evidence, or that petitioner's counsel was ineffective." Id. (quoting Coogan v. McCaughtry, 958 F.2d 793, 801 (7th Cir. 1992)).

Petitioner has not connected the new evidence regarding Stalsberg's alleged recantation to any constitutional violation that occurred during his trial, including the alleged ineffective assistance of his trial counsel. The evidence of Stalsberg's recantation came to light only after the trial. Further, even though newly-discovered evidence is a ground for relief under Wisconsin law, State v. Plude, 2008 WI 58, ¶¶ 32-33, 310 Wis. 2d 28, 750 N.W.2d 42, petitioner cannot obtain federal habeas relief as a result of a state

17

court's improper application of state law. Ruhl v. Hardy, 743 F.3d 1083, 1098 (7th Cir. 2014). Accordingly, this claim will be dismissed.

### C. Certificate of Appealability

The only question remaining is whether to issue petitioner a certificate of appealability. Under Rule 11 of the Rules Governing Section 2254 cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 282 (2004)(quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Although the rule allows the court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. Petitioner has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court. Because reasonable jurists would not otherwise debate whether a different result was required, no certificate of appealability will issue.

ORDER

IT IS ORDERED that

1. Petitioner David Walton's petition for a writ of habeas corpus under 28 U.S.C. § 2254, dkt. #1, is DENIED, and this case is DISMISSED. The clerk of court is directed to enter judgment for respondent Warden Brian Foster and close this case.

2. A certificate of appealability is DENIED. If petitioner wishes, he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Entered this 13th day of May, 2021.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge